UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

ELAINE BUCHANAN, )
 )
      Plaintiff, )
 )
v. ) CASE NO. 04-CV-11317-NG
 )
INTERSTATE ELECTRICAL SERVICES )
CORPORATION and STEPHEN D'AMICO, )
 )
      Defendants. )

---

## MOTION TO DISMISS (INCORPORATING MEMORANDUM)

Pursuant Fed. R. Civ. P. 12(b)(6) and 12(b)(1), the Defendants, Interstate Electrical Services Corporation ("Interstate") and Stephen D'Amico, hereby move to dismiss the Plaintiff's three-count Complaint in its entirety. Counts I and II, which allege that Interstate refused to allow the Plaintiff leave under Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"), and that Interstate retaliated against the Plaintiff for her assertion of FMLA rights respectively, should be dismissed because the Plaintiff, as a matter of law, was not eligible for FMLA leave and, as such, has failed to state cognizable claims based on that statute. To the extent that the Plaintiff's FMLA-based claims are dismissed, Count III, which alleges a common law claim for "promissory estoppel/ detrimental reliance/breach of contract," should also be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

I.   **FACTS AS ALLEGED IN THE COMPLAINT**[1]

The Plaintiff, employed by Interstate as a part-time receptionist since October 1, 2003, "took eight weeks of qualified FMLA leave beginning April 15, 2003, to address a serious medical problem she was experiencing."[2] Complaint at ¶¶ 4, 9. "Interstate recognized this leave as qualified FMLA leave." Complaint at ¶ 9.

On October 20, 2003, the Plaintiff sought but was denied more leave to care for her son, who was allegedly suffering from a worsening asthma condition. Complaint at ¶ 13. After nevertheless taking this time off from work, the Plaintiff was purportedly "suspended and ultimately terminated. . . ." Complaint at ¶ 19.

On or about June 15, 2004, the Plaintiff filed the instant Complaint,[3] alleging in three counts: 1) that the Defendants violated the FMLA by refusing to allow her leave to care for an ill family member; 2) that the Defendants

---

[1] The Complaint's factual allegations, most of which the Defendants vehemently deny, will be taken as true for purposes of this Motion only. See Fed. R. Civ. P. 12(b)(6).

[2] The Plaintiff then alleges that "Following this eight (8) week period, the Plaintiff was entitled to four (4) remaining weeks of FMLA before April 14, 2004." Complaint at ¶ 9. This legal conclusion, which forms the sole basis of the Plaintiff's FMLA claims (and which, as shown below, is an incorrect statement of the law), need not be taken as true by the Court for purposes of Rule 12(b)(6). See, e.g., Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996), citing Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993) ("a court must take all well-pleaded facts as true, but it need not credit a complaint's 'bald assertions' or legal conclusions").

[3] On March 5, 2004, the Plaintiff filed a complaint with the U.S. Department of Labor alleging the same FMLA violations at issue here. After an investigation, the Department of Labor, on May 19, 2004, dismissed the Plaintiff's complaint, concluding that she was not eligible for FMLA leave for the same reasons set forth herein.

- 2 -

retaliated against her for asserting her FMLA rights; and 3) a common law claim for "promissory estoppel/detrimental reliance/breach of contract" based on the Defendants' alleged breach of their promise to allow the Plaintiff leave when necessary to care for her son. For the reasons set forth below, the Plaintiff's Complaint should be dismissed in full.

## II. ARGUMENT

### A. COUNTS I AND II SHOULD BE DISMISSED BECAUSE THE PLAINTIFF IS NOT ELIGIBLE FOR FMLA LEAVE AS A MATTER OF LAW AND, THEREFORE, HAS FAILED TO STATE COGNIZABLE CLAIMS UNDER THAT STATUTE.

The FMLA affords an eligible employee up to twelve weeks of leave within a twelve month period for, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee" and "in order to care for a. . .son. . .with a serious health condition." 29 U.S.C. § 2612(a)(1)(C) and (D). To be eligible to take FMLA leave an employee must, among other things, have worked at least 1,250 hours during the 12-month period immediately preceding the commencement of the leave. 29 U.S.C. § 2611(2)(A)(ii); 29 C.F.R. § 825.110(a)(2).

The sole issue for purposes of this Motion is whether the Plaintiff was eligible for FMLA leave to care for her son on October 20, 2003. As noted, the Plaintiff baldly alleges that having qualified for and used eight weeks of FMLA leave for her own serious health condition beginning on April 15, 2003, she continued to be entitled to four more weeks of leave before the

end of the 12-month period on April 14, 2004.[4/] Complaint at ¶ 11. This conclusion is not supported by the FMLA or its regulations.

The FMLA requires that eligibility for leave be determined at the time the employee requests leave for a distinct qualifying reason unrelated to previous FMLA leave taken in the preceding 12 months. See 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a)(2). Thus, an employee must show that she worked 1,250 hours in the 12-month period preceding that leave even though she may have been eligible for leave for a different qualifying reason earlier that year. Id.

Here, the Plaintiff's October 2003 request was a separate request for FMLA leave as it was based on an FMLA-qualifying reason (to care for her son's serious health condition) entirely different from that of her April 2003 leave (her own serious health condition). Complaint at ¶¶ 9, 13. Hence, her FMLA eligibility is properly re-determined as of October 20, 2003 by calculating whether she worked the requisite 1,250 hours in the 12-month period immediately preceding the leave commencement date. See 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a)(2).

As the Plaintiff implicitly concedes, she had not worked the necessary 1,250 hours in that time period. In this regard,

---

[4/] Significantly, the Plaintiff does not allege that she had worked the requisite 1,250 hours in the 12 months immediately preceding her October 20, 2003 leave request. See pp. 7-8 infra.

the Plaintiff fails to allege as much, instead relying solely on the (incorrect) legal argument that because she qualified for and used eight weeks of FMLA leave commencing in April, 2003, she continued to be eligible for four more weeks of leave in October, 2003, no matter the reason. See generally, Complaint at ¶¶ 5, 11 and 13.

Moreover, the Plaintiff specifically alleges that she worked an average of 27.5 hours per week (Complaint at ¶¶ 4-5). Given that she could have worked at most 44 weeks between October 20, 2002 and October 20, 2003 (that is, 52 weeks minus the eight weeks of leave she took commencing in April, 2003 (Complaint at ¶ 11)), she only could have worked a maximum of 1,210 hours. This calculation, of course, does not account for the Plaintiff's vacation time and her other many absences in that time period. In short, the Plaintiff simply cannot claim (and has not claimed) that she met the 1,250-hour requirement as of October 20, 2003.[5]  See Delgado v. Solopak Pharmaceuticals, 4 Wage & Hour Cas. 2d (BNA) 1179, 1181-82 (N.D. Ill. 1997) (noting that on motion to dismiss court could consider number of hours worked for FMLA eligibility purposes where, although not alleged in the complaint, plaintiff did not

---

[5] To the extent that the Court nevertheless wishes to view this Motion as one for summary judgment under Fed. R. Civ. P. 56, the Defendants reserve the right to submit an affidavit and supporting documents that will indisputably show that the Plaintiff's hours worked in the relevant time period are well below 1,250.

contest employer's assertion that she had not met 1,250-hour requirement).

The Department of Labor, the agency responsible for implementing the FMLA and whose statutory construction should be given deference (see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984)), has confirmed the above interpretation in its publication of illustrative examples of the proper application of the 1,250-hour test.  Exhibit A.  In those hypothetical examples, an employee who had previously qualified for FMLA leave for multiple sclerosis ("MS") later requests leave for another serious health condition that requires major surgery and a subsequent period of recovery:

> Assume . . . at the time of the second and different FMLA-qualifying circumstance, the employee does not meet the 1,250-hour eligibility test.  In this situation, the employee would not be entitled to FMLA for that (i.e., second) reason.  Thus, it is possible that an employee could remain eligible for leave for one FMLA-qualifying reason for which prior notice had been given when the employee met the 1,250 hour test (i.e., MS) but not be eligible for FMLA leave for a different FMLA-qualifying reason (i.e., surgery and recovery), due to the 1,250-hour test being re-calculated at the commencement of the subsequent and separate need for leave.

Exhibit A (emphasis in original).  See also, Barron v. Runyon, 11 F. Supp. 2d 676, 683 (E.D. Va. 1998) (recognizing that an employee could simultaneously be eligible for FMLA leave for a medical condition on which a previous leave was based but ineligible for leave based on a different medical condition and noting that this is "simply a natural consequence of the

- 6 -

requirement that an employee give notice to an employer and establish his eligibility each time he wants to take FMLA leave to care for a <u>different</u> health condition") (emphasis in original).

Because she had not worked the requisite 1,250 hours in the preceding 12-month period, the Plaintiff was not eligible for FMLA leave on October 20, 2003. She has therefore failed to state a claim based on the Defendants' alleged violation of that statute by failing to allow her leave on that date and Count I should be dismissed.

Count II, alleging retaliation for the Plaintiff's assertion of FMLA rights, should be dismissed for the same reason. It is well-settled that in order to make out a cognizable claim of retaliation for engaging protected activity under the FMLA, an employee must be eligible for FMLA protection in the first place. See <u>Hodgens v. General Dynamics Corp.</u>, 144 F.3d 151, 161-63 (1st Cir. 1998) (analyzing whether employee is eligible for FMLA leave to determine whether he could make out <u>prima facie</u> FMLA retaliation claim); <u>Delgado</u>, 4 Wage & Hour Cas. 2d (BNA) at 1182 ("To sustain an FMLA retaliation claim, the plaintiff must allege that she was an eligible employee at the time she took her leave. That is, in order to claim that she engage in FMLA-protected activity, she must allege that she was eligible for leave at the time she took it") (internal emphasis omitted).

Because, as shown above, the Plaintiff was not eligible for FMLA leave on October 20, 2003, the time she took off from work to care for her son at that time was not protected by the FMLA. The Plaintiff has therefore failed to allege that she engaged in protected activity under the FMLA and has, therefore, failed to state a viable claim of FMLA retaliation based on the Defendants' purported actions against her for taking that leave. Count II should be dismissed.

    B.    **TO THE EXTENT THAT THE PLAINTIFF'S FMLA-BASED COUNTS ARE DISMISSED, COUNT III SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

To the extent that the FMLA-based claims are dismissed, Count III, which alleges a common law claim for "promissory estoppel/ detrimental reliance/breach of contract," should also be dismissed. Federal courts will customarily dismiss pendent state-law claims where the federal statutory claims on which federal jurisdiction is based are dismissed. See Feinstein v. Resolution Trust Corp., 942 F.2d 34, 47 (1st Cir. 1991). Because the Plaintiff's FMLA claims should be dismissed, Count III should also be dismissed for lack of subject matter jurisdiction.

### III. CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that the Court dismiss the Complaint in its entirety pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

Respectfully submitted,

INTERSTATE ELECTRICAL SERVICES
CORPORATION and STEPHEN D'AMICO

By their attorneys,


_____
Carol Chandler (BBO #080500)
John M. Simon (BBO #645557)
Stoneman, Chandler & Miller LLP
99 High Street
Boston, MA 02110
(617) 542-6789


Dated: July 30, 2004



Certification Pursuant to Local Rule 7.1(A)(2)

I hereby certify that, pursuant to Local Rule 7.1(A)(2), I have conferred with Plaintiff's counsel regarding the subject matter of this Motion in a reasonable and good faith attempt to resolve this matter before filing this Motion.


_____
John M. Simon


**Certificate of Service**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (~~by hand~~) + fax on 7-30-04.

_____

- 9

not determined by the application of any single criterion; rather the entire relationship is to be viewed in its totality. For example, joint employment will ordinarily be found to exist when a temporary or leasing agency supplies employees to a second employer.

Based on the information presented in the letter, it appears that the PEO is in a joint employment relationship with its client for these reasons:

1. The PEO is a separately owned and a distinct entity from the client as it is under contract with the client to lease employees for the purpose of handling "critical human resource responsibilities and employer risks for the client."
2. The PEO is acting directly in the interest of the client in assuming human resource responsibilities.
3. The PEO appears to also share control of the "leased" employee consistent with the client's responsibility for its product or service.

In joint employment relationships, the factors for determining the "primary" employer are authority/responsibility to hire and fire, assign/place the employee, make payroll, and provide employment benefits. Based on the description of the PEO's responsibilities, it would appear that the PEO is the "primary" employer for those employees "leased" under contract with the client. As the "primary" employer, the PEO is responsible for giving required notices to its employees, providing FMLA leave, maintaining group health insurance benefits during the leave, and restoring the employee to the same or equivalent job upon return from leave. The "secondary employer" (i.e., the client) is responsible for accepting the employee returning from FMLA leave in place of a replacement employee if the PEO chooses to place the employee with the client. In addition, the client as the "secondary" employer, whether a covered employer or not under the FMLA, is prohibited from interfering with a "leased" employee's attempt to exercise rights under the Act, or discharging or discriminating against an employee for opposing a practice that is unlawful under the Act.

Both employers must count employees who are jointly employed, whether or not maintained on the other employer's payroll, in determining employer coverage and employee eligibility. For example, if the client employer has 40 "leased" employees that are jointly employed with the PEO and, in addition, employs 15 "permanent" employees at the worksite, then the client is an FMLA-covered employer as it employs more than 50 employees. The client employer would only be responsible for granting FMLA leave to its 15 "permanent" employees, but not for the jointly employed "leased" employees as that responsibility belongs to the PEO as the "primary" employer. If the total number of employees, both jointly employed and "permanent," is less than 50 and the client employer does not have any other worksites, the client employer would not be a covered employer and would not have to grant FMLA leave to its "permanent" employees. Eligibility for the 40 "leased" employees would be determined by counting all of the "leased" employees assigned from or working at the PEO's site of employment (most likely the "placement" or "corporate" office). Excluded from this count would be any "permanent" employee of any client employer.

I hope this letter fully addresses your concerns. If you require further assistance, please do not hesitate to contact me.

Sincerely,
Michelle M. Bechtoldt
Office of Enforcement Policy
Family and Medical Leave Act Team

\* \* \* \* \* \* \* \* \* \* \* \*

**Letter Ruling:** September 11, 2000 (FMLA-112)

Thank you for your letter seeking an opinion on how the 1,250 hours of service test applies under the Family and Medical Leave Act of 1993 (FMLA) in determining an employee's eligibility for leave taken intermittently or on a reduced leave schedule due to a qualifying serious health condition.

You specifically inquired about determining the eligibility of a part-time employee who used intermittent FMLA leave on a number of occasions due to a chronic serious health condition (multiple sclerosis or MS). Later in the same year, the employee took six weeks of FMLA leave for another serious health condition (a hysterectomy). Although she had worked 1,356.75 hours in 12 months preceding the commencement of this leave, by the conclusion of the leave, she had dropped below 1,250 hours of service in the preceding year (1,195.25). After her return to work, she again needed leave for her MS. Because she only worked a part-time schedule, she had worked fewer than the required 1,250 hours in the 12 months preceding this latest leave. You cited the decision in *Barron v. Runyon*, 11 F. Supp. 2d 676 (E.D. Va. 1998), and asked how this court decision would apply in determining this employee's eligibility for FMLA leave for her MS.

The statute defines an eligible employee in Section 101(2)(A)(i) and (ii) as one who has "been employed . . . for at least 12 months by the employer with respect to whom leave is requested and for at least 1,250 hours of service with such employer during the previous 12-month period." The FMLA Regulations, at 29 CFR § 825.110 (a)(2), provide that the employee must have performed "at least 1,250 hours of service during the 12-month period *immediately preceding the commencement of leave*." This regulation is consistent with both the Senate and House Committee Reports, which state that "the employee must . . . have worked for the employer for at least 1,250 hours of service during the 12 months period *immediately preceding the commencement of the leave*." [1] In addition, § 825.110(d) expressly states that determinations of whether an employee has worked for the employer for at least 12 months and for 1,250 hours in the past 12 months must be made *"as of the date leave commences."* The issue, then, is what the term "leave" means — whether it encompasses all leave for the same serious health condition, or whether *each* intermittent leave absence for the same condition is considered separate leave under the Act and regulations.

The FMLA regulations define intermittent leave as "leave taken in **separate blocks** of time due to a single qualifying reason" (§§ 825.203 and 825.800; emphasis added).

This definition is based upon the statutory provisions and the legislative history pertaining to intermittent leave. The FMLA authorizes employees to take intermittent leave or leave on a reduced schedule "when medically necessary." Section 102(b)(1).

The Congressional Committee Reports recognize that some serious health conditions require that an employee be "absent from work on a recurring basis" rather than for a single block of time, and that "continuing treatment or supervision may sometimes take the form of intermittent visits to the doctor."[2] Intermittent leave may be medically necessary for planned and/or unanticipated medical treatment, or for recovery from a serious health condition. Intermittent leave may be taken for an employee's own or a family member's serious health condition. Congress confirmed that, when an employee uses intermittent leave, only the amount of time actually used may be counted against the 12 weeks of leave to which an employee is entitled. Section 102(b)(1).

The intermittent leave concept assumes alternating periods of absence from and presence at work for the same FMLA-qualifying reason. If each such absence were treated as a separate period of FMLA leave, requiring an employee to reestablish eligibility with each absence,

there would have been no need for Congress to codify the concept of intermittent leave. Thus, it is our position that the 1,250-hour eligibility test is applied only once, on the commencement of a series of intermittent absences, if all involve the same FMLA-qualifying serious health condition during the same 12-month FMLA leave year. The employee in such a case remains entitled to FMLA leave for that FMLA reason throughout that 12-month period, even if the 1,250-hour calculation is not met at some later point in the 12-month period during the series of related intermittent absences.

Once an employee is determined to be eligible for FMLA leave, whether the leave is taken continuously or intermittently, the statute (§ 102(a)) provides for "a total of 12 workweeks of leave during any 12-month period for one or more" qualifying reasons. The regulations (29 CFR §§ 825.200(b) through (e)) permit an employer to choose from four different methods for determining the 12-month period that will be used to calculate an employee's FMLA leave entitlement. The four methods are the calendar year, any fixed 12-month "leave year," a 12-month period measured forward from the date any employee's first FMLA leave begins, and a "rolling" 12-month period measured backward from the date an employee uses any FMLA leave.[3] Where an employer has selected either the calendar year, fixed year, or the 12-month period measured forward, it is our position that an employee's eligibility, once satisfied, for intermittent FMLA leave for a particular condition would last through the entire current 12-month period as designated by the employer for FMLA leave purposes. If an employer uses the rolling backward method, an employee's eligibility for absence due to a particular condition would continue for 12 months from the date of the first FMLA absence for the condition. Under all of these methods, eligibility could be re-calculated at the time of the first absence for the condition after the conclusion of the 12-month period. Furthermore, it is important to realize that this analysis is separate and distinct from determining whether an eligible employee's leave entitlement has been exhausted.

In *Barron v. Runyon*, the court considered these questions under the FMLA and rendered a decision consistent with our analysis set forth above. In *Barron*, the court held that an employee need only establish eligibility once at the beginning of the intermittent leave, and "an employee who requests several distinct periods of absence for 'a single qualifying reason' is seeking only one period of intermittent leave." 11 F. Supp. 2d at 682. The court observed that the rule for determining employee eligibility based on whether 50 employees are employed within 75 miles (29 CFR § 825.110(f)) is determined when the employee gives notice of the need for leave and, once eligible, the employee's eligibility is not affected by any subsequent changes in the number of employees employed at or within 75 miles of the employee's worksite, for that specific notice of the need for leave. An employer, for instance, could not terminate FMLA leave after it has commenced if the employee-count drops below 50. The court found this regulation "directly analogous to the situation [that] once an employee is determined eligible based on the number of hours he has worked in the twelve months preceding the first date of the leave, 'the employee's eligibility is not affected by any subsequent change in the number' of hours he worked in the twelve months prior to any subsequent date on which he takes an absence pursuant to his intermittent leave for the same medical condition." Id. The court also concluded that FMLA leave "cannot be taken 'forever' on the basis of one leave request. Instead, the statute grants an employee twelve weeks of leave per twelve-month period, not indefinitely." 11 F. Supp. 2d at 683. See also *Butler v. Owens-Brockway Plastic Products, Inc*, 5WH Cases 2d 1281 (6th Circuit 1999), in which the court held that the 1,250 hours of service must be computed from the date of commencement of leave rather than the date of the adverse action that violated the Act.

The following three examples will help to illustrate how an employee's eligibility is determined by FMLA's 1,250-hour test:

1. Assume an employee is diagnosed with an FMLA-qualifying chronic condition, such as MS as in your example, that results in an employee needing intermittent leave due to the episodic nature of the condition. For example, if an employee with MS who was eligible to take intermittent FMLA leave in April and May needed leave again when the episodes of incapacity recurred in July and again in October, the employee would be entitled to FMLA leave without having to re-qualify under the 1,250-hour eligibility test so long as the absences occurred within the same 12-month period and the employee had not exhausted the 12-week leave entitlement for this or any other FMLA-qualifying reason. If the employee needed leave for MS again in a new 12-month period, the employee would have to re-qualify under the 1,250-hour eligibility test to be entitled to take FMLA leave for the same chronic condition in the new 12-month period.

2. Assume the same facts as in the first example and, in addition, assume that the employee requests FMLA leave for up to six weeks for another serious health condition that requires major surgery and a subsequent period of recovery (e.g., a hysterectomy). If, at the time of this second and different FMLA-qualifying circumstance, the employee met the 1,250-hour eligibility test, the employee would be entitled to FMLA leave for *that* (i.e., second) reason. In addition, the employee would also continue to be eligible for intermittent FMLA leave for the chronic serious health condition (i.e., MS) for the remainder of the current 12-month period or until the 12-week leave entitlement has been exhausted.

3. Assume the same facts as in the second example except, at the time of the second and different FMLA-qualifying circumstance, the employee does not meet the 1,250-hour eligibility test. In this situation, the employee would not be entitled to FMLA leave for *that* (i.e., second) reason. Thus, it is possible that an employee could remain eligible for leave for one FMLA-qualifying reason for which prior notice had been given when the employee met the 1,250-hour test (i.e., MS), but not be eligible for FMLA leave for a different FMLA-qualifying reason (i.e., surgery and recovery), due to the 1,250-hour test being re-calculated at the *commencement* of the subsequent and separate need for leave.

Our response is based solely upon the information contained in your letter and addresses only the application of the 1,250-hour eligibility test in the context of intermittent leave. We have assumed that all other FMLA requirements are satisfied, or are otherwise not an issue.

I trust that our reply is responsive to your request, and apologize for any inconvenience caused by our delay in not being able to respond sooner to your letter. Please contact this office if you have any questions or require further assistance.

Sincerely,
T. Michael Kerr
Administrator

\* \* \* \* \* \* \* \* \* \* \* \*

**Letter Ruling: September 11, 2000 (FMLA-113)**

Thank you for your letters seeking an opinion under the Family and Medical Leave Act of 1993 (FMLA) regarding return-to-work procedures required by the \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*for employees who are returning to work following FMLA leave due to their own "serious health condition."

In the first letter, you specifically ask whether the FMLA would permit the \*\*\*\* to require an employee to submit to a "fitness-for-duty examination" before returning to work from FMLA leave where the employee's health care provider has certified the employee to be "fit to return to duty without restriction." You also asked that we assume for purposes of answering your inquiry that the handbook and manual