IN THE FEDERAL DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Docket No. 04-CV-11317-NG

ELAINE BUCHANAN,
Plaintiff

v.

INTERSTATE ELECTRICAL
SERVICES and
STEPHEN D'AMICO,
Defendants

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I.
## INTRODUCTION

NOW COMES the Plaintiff, Elaine Buchanan, and hereby opposes the Defendants' motion to dismiss. The facts as plead clearly demonstrate liability on the part of Interstate Electrical Services ("Interstate") and Stephen D'Amico ("D'Amico") for violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. The Plaintiff was clearly eligible for FMLA leave on October 20, 2003, and the facts alleged in the Complaint are more than sufficient to sustain the Plaintiff's claims. Furthermore, the unique statutory interpretation upon which the Defendants rely does not merit deference, is not persuasive and is contrary to the plain meaning and underlying purpose of the FMLA. Therefore, Counts I and II of the Complaint, asserting causes of action under the FMLA, and Count III, alleging a common law contract claim, must be permitted to stand.

## II.
## FACTS OF THE COMPLAINT

Ms. Buchanan began working for Interstate on October 1, 2001. See *Complaint* at ¶ 4. A condition of her employment was that she be permitted leave to care for her children in the event they were ill. See *Complaint* at ¶ 6. Ms. Buchanan was recognized for her job performance, and although she worked an average of approximately 27.5 hours per week, she frequently worked extra hours. See *Complaint* at ¶¶ 5 and 7.

On January 21, 2003, Ms. Buchanan took leave to care for her son, Nick, who suffers from asthma. See *Complaint* at ¶¶ 9 and 10. The Plaintiff informed her employer of her son's condition and she took additional leave to care for him when necessary. See *Complaint* at ¶ 10. This leave was and remains FMLA qualifying leave. See *Complaint* at ¶ 9.

Ms. Buchanan took eight (8) weeks of qualified FMLA leave beginning April 15, 2003, to address her own medical condition. See *Complaint* at ¶ 11. The Plaintiff's October 1, 2003, written work performance review criticizes the Plaintiff because she "[t]akes time off sometimes when needed the most. For children, sick, etc." See *Complaint* at ¶ 12.

On October 20, 2003, Nick's condition deteriorated and his asthma symptoms worsened. See *Complaint* at ¶ 13. Ms. Buchanan was obligated to miss work in order to care for him, and she took immediate steps to notify her employer. See *Id.* The Plaintiff

telephoned her supervisor, D'Amico at 7:00 a.m., but he did not answer his telephone. See *Id.* Ms. Buchanan left D'Amico a message with a co-worker indicating that she was unable to come into work that day due to her son's emergent asthma-related illness. See *Id.* D'Amico telephoned the Plaintiff at 8:45 a.m.; he was palpably irritated and told Ms. Buchanan, "[d]on't bother coming in tomorrow then either." See *Complaint* at ¶ 14.

Due to her effective retaliatory 'suspension' by D'Amico, the Plaintiff did not work the following day. See *Complaint* at ¶ 15. When she returned to work, Ms. Buchanan discussed her agreement with Interstate regarding taking leave to care for her children with D'Amico, who stated that he did not believe that the Plaintiff was permitted to take time off to care for her son. See *Complaint* at ¶ 16. Ms. Buchanan then had a conversation with Edward Zinck, the Human Resources manager, and Al Tiezzi, the Vice President of the Construction Division, regarding D'Amico's conduct. See *Complaint* at ¶ 17. Mr. Tiezzi instructed the Plaintiff to go home and await his call. See *Complaint* at ¶ 17.

Ms. Buchanan was not formally contacted again, and was later informed that Interstate considered her to have resigned. See *Complaint* at ¶ 19. In its decision issued March 1, 2004, the Massachusetts Division of Employment and Training (a/k/a "DET") found that the Plaintiff "did not initiate her own separation or quit her job," and that Interstate had initiated the separation without informing Ms. Buchanan. The Plaintiff claims her termination was a result of her FMLA request and associated leave. See *Complaint* at ¶¶ 19, 27, 33 and 34.

## III.
## APPLICABLE LEGAL STANDARD

In considering a motion to dismiss under Fed. R. Civ. P. 12 (b) (6), a court must "accept as true the facts alleged in the complaint, construe all reasonable inferences in favor of the Plaintiff, and determine whether the Plaintiff can recover under any cognizable legal theory." See Kisich v. U.S., 275 F.Supp.2d 48, 49 (D.Mass., 2003).

## IV.
## ARGUMENT

### A. The Plaintiff was eligible for FMLA leave on October 20, 2003, because she had taken qualifying leave for the same reason on January 21, 2003, and had not exhausted her 12 week annual entitlement.

The FMLA entitles eligible employees to "a total of 12 workweeks of leave during any 12-month period for one or more" of four enumerated reasons, including to care for a child with a serious health condition. 29 U.S.C. § 2612 (1). Leave may be taken intermittently, and an employee's eligibility for intermittent leave is determined at the time leave is first requested or taken. 29 U.S.C. § 2612 (b) (1); see also Barron v. Runyon, 11 F.Supp.2d 676, 681 (E.D.Va., 1998). Intermittent leave is leave taken in separate blocks of time for the same qualifying reason. See 29 C.F.R. § 825.203 (a).

While the Plaintiff rejects the Defendants' interpretation that the Plaintiff is required to separately establish eligibility for FMLA leave for different qualifying reasons, even within the same 12-month period, the Plaintiff nonetheless qualified for leave to care for her son in October, 2003. See *Complaint* at ¶¶ 9 and 10. Interstate first granted the

Plaintiff leave to care for her son's asthma on January 21, 2003. This is the relevant date for the purpose of determining her eligibility to take leave to care for her son's asthma. See Barron, *supra*. Asthma qualifies as a "serious health condition" under the FMLA. See 29 C.F.R. § 825.114 (specifically listing asthma as an example of a qualifying chronic serious health condition). Furthermore, Ms. Buchanan was not obligated to specifically request that this leave be designated as FMLA leave. See Stoops v. One Call Communications, Inc., 141 F.3d 309 (7th Cir., 1998) (holding that an employee need not mention the FMLA, but only must provide employer with enough information to put employer on notice that FMLA-qualifying leave is needed). Therefore, Ms. Buchanan was entitled to 12 workweeks of leave in the period between January 21, 2003, and January 20, 2004.

On October 20, 2003, well within this period, Ms. Buchanan once again required leave for the same qualifying reason, her son's asthma. Contrary to the Defendants' assertion, the Plaintiff's eligibility should not have been re-assessed as of October 20, 2003. Having already been granted leave for the same FMLA qualifying reason earlier in the same 12 month period, and having provided adequate notice to her employer, Ms. Buchanan remained eligible for leave on October 20, 2003. As this is the exclusive legal argument and "sole issue" set forth in the Defendants' motion to dismiss, the Defendants' motion must fail as a matter of law.

B. The Defendants' interpretation of the FMLA eligibility requirements is contrary to the plain meaning of the FMLA, specific legislative intent and would generate inconsistent application.

The relevant section of the FMLA governing leave entitlement reads as follows:

> [A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for *one or more* of the following:
>
> (A) Because of the birth of a son or daughter…
> (B) Because of the placement of a son or daughter with the employee for adoption or foster care.
> (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. (29 U.S.C. § 2612 (a) (1) (emphasis added))

In its motion, the Defendants contend that "the FMLA requires that eligibility for leave be determined at the time the employee requests leave for a distinct qualifying reason unrelated to previous FMLA leave taken in the preceding 12 months." See *Defendants' Motion to Dismiss* at 4. In support of their interpretation, the Defendants proffer an administrative letter ruling, which they claim merits deference. See *Defendants' Motion to Dismiss* at 6 and "Exhibit A". However, this novel interpretation contradicts the plain language and underlying purpose of the statute. Furthermore, the administrative letter ruling upon which the Defendants rely does not merit judicial deference and stands in opposition to the Department of Labor regulations and commentary promulgated contemporaneously pursuant to notice and comment rulemaking.

As the Supreme Court has held, "interpretations such as those in opinion letters…do not warrant Chevron-style deference." Christensen v. Harris County, 529 U.S. 576, 587 (2000). An agency's interpretation of its own regulation is entitled to deference only when the language of the regulation is ambiguous. See Id. at 587-588. The FMLA section governing eligibility has "no ambiguity…no gap to be filled." Woodford v.

Community Action of Greene County, Inc., 268 F.3d 51, 55 (2nd Cir., 2001) (citing Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791 (11th Cir., 2000))

Moreover, courts will overrule an agency interpretation when contrary to the plain language and underlying purpose of the statute. See Leopoldstadt, Inc. v. Commissioner of Division of Health Care and Finance and Policy, 762 N.E.2d 824, 833 (Mass., 2002) (Citing Protective Life Ins. Co. v. Sullivan, 682 N.E.2d 624 (Mass., 1997).

The Defendants argue that Ms. Buchanan was entitled to 12 workweeks of leave during the 12-month period beginning in April, 2003, for only one qualifying reason. See *Defendants' Motion to Dismiss* at 4. The Defendants' position blatantly contradicts the plain language of the statute, which guarantees 12 workweeks of leave during a given 12-month period for more than one qualifying reason. The Defendants' interpretation also contradicts the Department of Labor's Commentary, issued with the governing regulations, which specifically states that "[o]nce the 12-month period is determined, an employee's FMLA leave entitlement is limited to a total of *up to* 12 workweeks of leave in that 12-month period *for any and all reasons that qualify for taking leave under FMLA*." See Department of Labor, Wage and Hour Division, "The Family and Medical Leave Act of 1993," WH Publication 1419 at 30, attached at "Exhibit A" (emphasis added).

A primary legislative aim of the FMLA is "to balance the demands of the workplace with the needs of families." See 29 U.S.C. § 2601. In accordance with this purpose, the

Supreme Court has found that 12 weeks is the fundamental guarantee of the FMLA and has struck down a Department of Labor Regulation that would afford employees a right to more than 12 workweeks of FMLA leave in a given 12-month period. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 84 and 94 (2002) (finding the 12 week entitlement to be the product of legislative compromise between the interests of business and that of employees).

If the Defendants' conflicting interpretation were to control, the result would be an inconsistent application of the statute in derogation of the legislative balance recognized in Ragsdale. Employees would be eligible for more than 12 workweeks of leave in a given 12-month period in some circumstances and would be limited to less than 12 workweeks of leave in other circumstances[1]. The Defendants' interpretation of the applicable FMLA provisions contradicts the plain meaning of the statute and leads to results that violate the underlying purpose of the FMLA. Therefore, the Defendants' assertion that the Plaintiff's eligibility was properly re-assessed in October, 2003, is in error.

The Defendants rely upon Barron v. Runyon in support of their proposition that an employee must re-qualify for leave with each new qualifying reason, regardless of whether or not it is within the same 12-month period. See *Defendants' Motion to Dismiss*

[1] For example, an employee who establishes eligibility separately for two distinct qualifying reasons within a short enough span of time would theoretically be entitled to 24 weeks of leave within the same year, 12 for each reason. Conversely, an employee taking fewer than 12 weeks of leave for one reason who is forced to re-establish her eligibility for a different qualifying reason during the same 12-month period may, due primarily to having already exhausted part of her leave entitlement, be unable to exercise her full 12 week entitlement. Both of these scenarios, consistent with the Defendants' interpretation of the provisions at issue, run afoul of the balance recognized in Ragsdale.

at 6. The Barron decision is neither controlling in the District of Massachusetts, nor is it on point. The court in Barron analyzed the FMLA statute based upon the assumption of a "rolling" leave period. See Barron, 11 F.Supp. 2d, at footnote 6 (noting that the Court's conclusion would differ given one of the alternative methods for calculating leave). As Interstate did not specify to the Plaintiff or her co-workers a single method of determining the applicable leave year, "the option that provides the most beneficial outcome for the employee will be used." 29 CFR § 825.200 (e). Therefore, the period to be applied in the instant case is the one that provides Ms. Buchanan the greatest amount of leave, not one that strips her of a position when she is compelled to care for her ill child. For this reason, the Barron decision is distinguished from the case at bar and is unpersuasive with respect to the FMLA provisions at issue.

C. The Plaintiff has adequately plead all counts of her Complaint.

The Defendants claim that the Plaintiff has failed to sufficiently plead Counts I and II of her Complaint because she was not eligible for FMLA leave on October 20, 2003. See *Defendants' Motion to Dismiss* at 7. However, the Plaintiff specifically alleges that she took FMLA qualifying leave in January, 2003, to care for her son. See *Complaint* at ¶ 9. For reasons previously discussed, this alone would qualify Ms. Buchanan for FMLA leave in October, 2003, for the same qualifying reason. Ms. Buchanan similarly alleges that her April, 2003, leave was FMLA qualifying leave. See *Complaint* at ¶ 11. Again, for reasons stated above, this would similarly qualify her for approximately four (4) additional weeks of FMLA leave, regardless of the January, 2003, leave.

In a similar case, the court found that a Plaintiff who had alleged only that she was "at all times material hereto, an 'eligible employee' as defined under the FMLA" had sufficiently stated her claims under the Act. Fitzner v. U.S. West Communications, Inc., 1998 U.S.Dist. LEXIS 17665, 4 Wage & Hour Cas. 2d (BNA) 1627 (D.Neb., 1998). At this initial stage of litigation, the Court must give deference to the allegations of the Complaint and deny the Defendants' Motion to Dismiss. Because the Plaintiff has sufficiently stated a claim upon which relief may be granted in the Federal statutory counts of the Complaint, Count III, alleging state common law violations, must survive due to this Court's pendant jurisdiction.

## V.
## CONCLUSION

WHEREFORE, the Plaintiff respectfully moves this Honorable Court to deny the Defendants' motion to dismiss all counts of the Plaintiff's Complaint and order any other relief it deems fair and just.

Respectfully Submitted,
Elaine Buchanan,
By her attorney,

Dated: August 11, 2004

David E. Belfort, Esquire
BBO # 6343854
Corrigan Bennett & Belfort, P.C.
One Kendall Square
Building 300, 2nd Floor
Cambridge, MA 02139
(617) 577-8800

CERTIFICATE OF SERVICE

I, David E. Belfort, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on August 11, 2004.

David E. Belfort

\\sarah\documents\home corbenbel\dave\clients\buchanan, elaine\opptodefmotiontodismiss.doc

# Exhibit A

# Federal Regulations Part 825






Title 29, Part 825 of the
Code of Federal Regulations

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

WH Publication 1419

April 1995

**DEPARTMENT OF LABOR**
**Wage and Hour Division**

**29 CFR Part 825**
**RIN 1215-AA85**

**The Family and Medical Leave Act of 1993**

AGENCY: Wage and Hour Division, Labor.

ACTION: Final rule.

**SUMMARY**: This document provides the text of final regulations implementing the Family and Medical Leave Act of 1993, Public Law 103-3, 107 Stat. 6 (29 U.S.C. 2601 *et seq.*) (FMLA or Act). FMLA generally requires private sector employers of 50 or more employees, and public agencies, to provide up to 12 workweeks of unpaid, job-protected leave to eligible employees for certain specified family and medical reasons; to maintain eligible employees' pre-existing group health insurance coverage during periods of FMLA leave; and to restore eligible employees to their same or an equivalent position at the conclusion of their FMLA leave.

EFFECTIVE DATE: These rules are effective on April 6, 1995.

FOR FURTHER INFORMATION CONTACT: J. Dean Speer, Director, Division of Policy and Analysis, Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Room S-3506, 200 Constitution Avenue, N.W., Washington, D.C. 20210; telephone (202) 219-8412. This is not a toll-free number.

**SUPPLEMENTARY INFORMATION:**

**I. Paperwork Reduction Act.**

Recordkeeping requirements contained in these regulations (§ 825.500) have been reviewed and approved for use through July 1996 by the Office of Management and Budget (OMB) and assigned OMB control number 1215-0181 under the Paperwork Reduction Act of 1980 (Pub. L. 96-511). No substantive changes have been made in this final rule which affect the recordkeeping requirements and estimated burdens previously reviewed and approved under OMB control number 1215-0181. Comments received regarding the estimate of public reporting burden for the information collection requirements contained in these regulations are discussed below in connection with § 825.500.

**II. Background.**

The FMLA was enacted on February 5, 1993. In general, FMLA entitles an "eligible employee" to take up to a total of 12 workweeks of unpaid leave during any 12-month period for the birth of a child and to care for such child, for the placement of a child for adoption or foster care, to care for a spouse or an immediate family member with a serious health condition, or when he or she is unable to work because of a serious health condition. Employers covered by the law are required to maintain any pre-existing group health coverage during the leave period and, once the leave period is concluded, to reinstate the employee to the same or an equivalent job with equivalent employment benefits, pay, and other terms and conditions of employment.

Title I of the Act applies to private sector employers of 50 or more employees, public agencies, and certain Federal employers and entities, such as the U.S. Postal Service and Postal Rate Commission. These regulations, 29 CFR Part 825, implement Title I of the FMLA. Similar leave entitlement provisions in Title II of the FMLA apply to most other Federal civil service employees who are covered by the annual and sick leave system established under 5 U.S.C. Chapter 63, plus certain employees covered by other Federal leave systems. The U.S. Office of Personnel Management (OPM) administers the regulations implementing Title II of the FMLA (*see* 5 CFR Part 630). Title III established a temporary "Commission on Leave," which is to conduct a comprehensive study and produce a report on existing and proposed policies on leave and the costs, benefits, and impact on productivity of such policies. Title IV contains miscellaneous provisions, including rules governing the effect of the Act on more generous leave policies, other laws, and existing employment benefits. Title V extended similar leave provisions to certain employees of the U.S. Senate and the U.S. House of Representatives.

Section 404 of the Act required the Department of Labor to issue regulations to implement Title I and Title IV of FMLA within 120 days of enactment, or by June 5, 1993, with an effective date of August 5, 1993. Title I of FMLA became effective on August 5, 1993, except where a collective bargaining agreement (CBA) was in effect on that date, in which case the provisions took effect on the date the CBA terminated or on February 5, 1994, whichever date occurred earlier.

The American Psychiatric Association suggested that a distinction should be maintained between doctors of medicine or osteopathy and non-physician health care professionals, and that certification for intermittent or reduced leave schedules should be accepted only from doctors of medicine or osteopathy, not non-physician health care providers. The Consortium for Citizens with Disabilities, on the other hand, suggested that the medical certification form be revised so that it does not appear that only a medical doctor or osteopath can sign off on the form.

California Rural Legal Assistance, Inc., Equal Rights Advocates, and William M. Mercer, Inc. recommended that foreign-certified or foreign-licensed health care providers should be recognized under FMLA, to account for the fact that many workers' parents, spouses or children do not reside in the U.S. or that such family members may become ill while abroad. (California Rural Legal Assistance, Inc. stated that many U.S. residents rely on Mexican doctors for health care.)

The law firm of Fisher & Phillips recommended that DOL delay exercising its authority to designate health care providers until there is an opportunity to determine the impact on the President's health care proposal.

After giving careful consideration to the numerous suggestions for changes in the definition of "health care provider," we have revised the final rule in the following respects. The definition will be expanded to include any health care provider that is recognized by the employer or accepted by the group health plan (or equivalent program) of the employer. To the extent that the employers or the employers' group health plans recognize any such individuals for certification of the existence of a health condition to substantiate a claim for health care and related services that are provided, they would be included in the revised definition of "health care provider" for purposes of FMLA. Clinical social workers will also be included because our review reveals that they are ordinarily authorized to diagnose and treat without supervision under State law. Physician's assistants are not included as health care providers under the regulations because they are ordinarily only permitted to practice under a doctor's supervision. An employee, however, may receive treatment by a physician's assistant or other health care professional under the supervision of a doctor or other health care provider without first seeing the health care provider and obtaining a referral. In addition, any services recognized by the plan which are furnished as a result of a referral while under the continuing supervision of a health care provider would qualify as medical treatment for purposes of FMLA leave (see § 825.114(c)(2)(i)(A)).

**II. Subpart B, §§ 825.200 - 825.220**

**Amount of Leave (§ 825.200)**

Employers must choose from among four options a single uniform method for calculating the 12-month period for determining "12 workweeks of leave during any 12-month period." The choice of options was intended to give maximum flexibility for ease in administering FMLA in conjunction with other ongoing employer leave plans, given that some employers establish a "leave year" and because of State laws that may require a particular result.

The California Department of Fair Employment and Housing recommended this section include cautionary advice to employers that the availability of options may be limited by State law (the California Family Rights Act starts the 12-month period with the date the employee first uses qualifying leave). William M. Mercer, Inc. questioned whether State family leave laws would control the employer's administration of FMLA, and also whether leave accrues under the backward rolling method on a daily basis. The State of New York's Department of Civil Service and the State of Nevada's Department of Personnel recommended that each agency or department within a State government be allowed to select a separate (*i.e.*, different) 12-month period.

The State of South Carolina's Division of Human Resource Management, the State of South Dakota's Bureau of Personnel, and the Edison Electric Institute recommended provisions be added to limit the amount of FMLA leave available to an employee for the birth or adoption of a child to a single 12-week period per event (*e.g.*, under the calendar year method, an employee who adopts or gives birth to a child late in the year would not be entitled to take additional leave in the second calendar year period because of the adoption or birth of that child). Similarly, Cincinnati Gas and Electric Company recommended the final rules prohibit an employee from receiving 24 weeks of protected leave for a single FMLA-covered event (*e.g.*, where the initial 12-week absence ends at the same time the next annual 12-week allotment begins). (See also the discussion of similar comments received on the section that follows, § 825.201.)

The Women's Legal Defense Fund recommended that DOL explicitly define the method rather than

allowing employer choices, to prevent manipulation, and suggested the period be calculated as the 12-month period following commencement of an employee's first FMLA leave (§ 825.200(b)(3)). If choices are allowed, they urge that the 12-month period rolling backward method (paragraph (b)(4)) be rejected because it curbs employee flexibility and is confusing to them. The American Federation of Teachers/National Education Association concurred with WLDF's comments. The AFL-CIO and Service Employees International Union submitted similar views. (SEIU also suggested clarifying that employers may not switch methods to deny employees leave, and that such action would violate FMLA's anti-interference provisions.) The United Paperworkers International Union suggested that the 12-month period be calculated by using each individual employee's anniversary date, as employees are not eligible until they have worked for at least 12 months, and this would prevent employers from manipulating the 12-month period to avoid FMLA obligations.

Fisher & Phillips suggested that the regulations refer to the 12-month "rolling period" as the default method for employers that have not designated a 12-month period.

The Society for Human Resource Management questioned whether the 12-week entitlement was for each separate reason specified under FMLA (12 weeks for childbirth, plus 12 weeks for a sick parent, plus 12 weeks for the employee's serious health condition, *etc.*, all in the same 12-month period), or for all reasons (total for all events in a 12-month period limited to 12 weeks). This commenter also questioned whether an employer must allow an employee to return to work early in the situation where the employee requested 12 weeks of leave and, three weeks into the leave, the employee asks to return to work.

Black, McCuskey, Sourers & Arbaugh stated that employees of employers who selected the calendar year should be entitled to only five weeks of FMLA leave for the period between August 5, 1993, and December 31, 1993. The Department cannot agree with this line of reasoning, which would suggest that employees of employers who select the calendar year would be entitled to less leave than other employees. Nor do we believe that Congress intended that an employee be entitled to one week of leave for each remaining month of the year after eligibility is established.

The final rule has been clarified in response to several of the comments received. The rule notes that an employer may be unable to choose one method from among the available regulatory options if a particular method is dictated by a State family leave law. In this regard, employers operating in multiple States with differing State family/medical leave provisions affecting the 12-month calculation must follow the method required by the State laws. Absent a conflict with State law, employers must select a single, uniform policy covering its entire workforce. Employers must inform employees of the applicable method for determining FMLA leave entitlement when informing employees of their FMLA rights. If an employer fails to designate one of the methods, employees will be allowed to calculate their leave entitlement under whichever method is most beneficial to them. The employer in that case would subsequently be able to designate a choice prospectively, but would have to follow the rule for employers wishing to change to another alternative (*i.e.*, give 60 days notice to all employees, and employees retain the full benefit of 12 weeks of leave under whichever method yields the greatest benefit to employees during the 60-day transition period).

When determining the amount of FMLA leave taken, a holiday occurring within a week of FMLA leave has no effect -- the week is still counted as a week of FMLA leave. If, however, the employer's activities temporarily cease for one or more weeks and employees generally are not expected to report for work (*e.g.*, a school that closes two weeks for the Christmas and New Year holiday or for the summer vacation; a plant that closes two weeks for repairs or retooling), the days on which the employer's activities have ceased do not count against an employee's FMLA leave entitlement.

The "rolling backward" method is a snapshot of the 12-month period that changes daily (*i.e.*, as each new day is added to the 12-month period, one day from 12-months ago is eliminated). While many comments were received opposing this method, it has been retained as one of the available options because it is the one method that most literally tracks the statutory language.

Once the 12-month period is determined, an employee's FMLA leave entitlement is limited to a total of *up to* 12 workweeks of leave in that 12-month period for any and all reasons that qualify for taking leave under FMLA. If an employer selects the calendar year as the 12-month period, there is no authority under the statutory language to limit an employee's entitlement to a "per event" concept. (This would be akin to saying that if an employee

under the calendar year method suffered a heart attack in the month of December, that employee would no longer qualify, once the new year arrived, to take FMLA leave for that serious health condition. We ardently reject this strained interpretation.) The only limitation the Act places on an employee's taking FMLA leave in a subsequent 12-month period to care for a newborn or newly-adopted child is that the entitlement to leave for such purposes expires 12 months after the date of the birth or placement.

If an employee begins a requested 12-week leave of absence and, three weeks into the leave, asks to return to work earlier than originally planned, the employer is obligated to promptly restore the employee. An employee may only take FMLA leave for reasons that qualify under the Act, and may not be required to take more leave than is necessary to respond to the need for FMLA leave. If circumstances change and the employee no longer has a need for FMLA leave (which could include a parent's changed decision not to stay home with a newborn child as long as originally planned), the employee's FMLA leave is concluded and the employee has an absolute right under the law to be promptly restored to his or her original or an equivalent position of employment. This view does not mean that employees do not also have obligations to provide notice to the employer of such changing circumstances. If an employee's status changes and the employee is able to return to work earlier than anticipated, the employee should give the employer reasonable advance notice, generally at least two working days. This is addressed in § 825.309(c). An employer may also obtain such information through periodic status reports on the employee's intent to return to work.

**Conclusion of Leave for Birth or Adoption (§ 825.201)**

Under § 102(a)(2) of FMLA, an employee's entitlement to leave for a birth or placement of a son or daughter "shall *expire* at the *end* of the 12-month period *beginning* on the date of such birth or placement" (emphasis added). This section of the regulations repeated the statutory terms with the added qualifications that State law may require, or an employer may permit, a longer period; any such FMLA leave, however, must be *concluded* within this statutory 12-month period.

The Los Angeles County Metropolitan Transportation Authority recommended this section be revised to state clearly that leave for the birth of a child, or placement of a child with the employee for adoption or foster care, must be initiated and completed within 12 months after the birth or placement. Nationsbank Corporation (Troutman Sanders) stated that the termination date for an employee's entitlement to leave under this section should occur 12 months after the first FMLA leave is taken in connection with the event, rather than 12 months after the date of birth or placement, suggesting this approach would be more consistent with other regulatory provisions allowing such leave to begin before the actual date of birth or placement. (Otherwise, they suggest, the 12 weeks of leave could be spread over a period greater than the 12-month period provided by FMLA's requirements.)

The Employers Association of New Jersey questioned whether a provision under the New Jersey law that requires leave to *commence* (but it need not conclude) within one year of the date of birth would prevail over the FMLA.

The Women's Legal Defense Fund considered the language in this section of the regulations too restrictive, suggesting it removes scheduling flexibility for employees. WLDF suggested replacing "concluded" with "begun" (which, thus, would read like the New Jersey law cited above).

The Chamber of Commerce of the USA suggested modifications that would limit an employee's leave entitlement to a single 12-week period for the birth or placement of a child, to make it clear that an employee is not entitled to "stack" leave periods in connection with a single birth or placement. The Association of Washington Cities expressed similar views.

Our review of the statute and its legislative history in the context of the comments received has confirmed our initial views on this section. The statute clearly states that the entitlement to leave *expires* at the end of one year following the date of birth or placement of the child. Thus, the leave must be concluded (*i.e.*, completed) within the statutory entitlement period. There is no authority to provide by regulation that the leave need only begin within the statutory 12-month period. If a State provision (as is the case in New Jersey) allows for a longer or more generous period, the more generous State provision would prevail but such leave beyond what FMLA requires would not count as FMLA leave (see § 401(b) of FMLA, discussed below in connection with § 825.701 of the regulations). There is no authority to shorten the statutory 12-month period under the regulations where an employee begins leave for the birth or placement prior to the actual