UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELAINE BUCHANAN,<br>    Plaintiff | )<br>)<br>) |
| v. | )   Docket No. 04-CV-11317-NG<br>) |
| INTERSTATE ELECTRICAL<br>SERVICES and<br>STEPHEN D'AMICO,<br>    Defendants | )<br>)<br>)<br>) |

**JOINT STATEMENT OF THE PARTIES PURSUANT TO LOCAL RULE 16.1**

NOW COME the Parties to this action, Plaintiff, Elaine Buchanan and Defendants, Interstate Electrical Services and Stephen D'Amico, and hereby submit this joint statement pursuant to Rule 16 (b) of the Federal Rules of Civil Procedure and Local Rule 16.1 (d).

I. Concise Summary of the Positions of the Parties:

   A. Plaintiff's Position:

This action involves the Plaintiff's allegations that the Defendants denied her right to take reasonable leave under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") (Count One), Unlawful Retaliation for Asserting a Protected Right to request leave to care for her minor child (Count Two), Promissory Estoppel/Detrimental Reliance/Breach of Contract (Count Three).

The Plaintiff, Elaine Buchanan ("Buchanan"), began working for the Defendant, Interstate Electrical Services ("Interstate") on October 1, 2001, as a part-time receptionist. Buchanan accepted the position on the conditions that she be permitted to

1

work "Mother's Hours" and leave work in the event that her children were ill or were released from school.

On or about April 3, 2002, Buchanan was transferred to the Mass Construction division at Interstate, where she worked as the personal secretary to Defendant, Stephen D'Amico ("D'Amico"), who was the Shop Manager. In January of 2003, Buchanan was obligated to take leave on two (2) occasions in order to care for her son, Nick, who suffers from asthma. On October 20, 2003, Nick experienced severe asthmatic symptoms, which required that he visit his pediatrician. Buchanan telephoned Interstate to notify her employer that she would be out of work due to Nick's doctor visit. D'Amico was out, but Buchanan left him a message regarding the medical emergency. Upon finding out about Buchanan's medical leave, D'Amico telephoned Buchanan at home and told her not to come to work the next day - clearly a punitive measure.

When Buchanan returned to work on October 22, 2003, she discussed the incident with D'Amico, who informed her that he did not believe she was permitted to take leave from work to care for her son. Buchanan subsequently informed Edward Zinck, Human Resources Manager at Interstate, and Al Tiezzi, the Vice President of the Construction Division, of her dispute with D'Amico. Due to D'Amico's patent hostility, Buchanan requested a transfer out of D'Amico's department, but Zinck and Tiezzi refused to consider her request. The Defendant, Interstate Electrical Services then terminated Buchanan's employment.

Buchanan alleges that Interstate and D'Amico suspended and ultimately terminated her in violation of her rights under the FMLA and in direct contravention of

the parties' express agreement that she was permitted to take leave time in order to care for her children.

### B. Defendant's Position:

The Defendants vehemently deny the Plaintiff's allegations. As an initial matter, the Plaintiff voluntarily quit her job on October 22, 2003. Only after she apparently had second thoughts about her resignation did the Plaintiff, many days later, indicate that she wanted a leave of absence under the FMLA. At that time, since she had already quit, the Plaintiff had no right to FMLA leave. Similarly, based on her previous decision to quit, the Plaintiff's claim of retaliation – that she was terminated for asserting FMLA rights – has no basis in fact or law.

Yet, even if she had not already quit, the Plaintiff's claims nevertheless must fail because she was not qualified for FMLA leave in October, 2003. Interstate determines an employee's FMLA eligibility by calculating hours worked in a rolling 12 month period looking backward from the date on which the leave would commence. In the 12 month period preceding October 2003, the Plaintiff did not work the 1,250 hours necessary to qualify.

The Plaintiff's belated claim – which despite previous unemployment compensation hearings and a U.S. Department of Labor investigation into the subject was asserted for the first time in opposition to Interstate's motion to dismiss in this matter – that she previously took qualifying FMLA leave in January 2003 to care for the serious health condition of her son and was therefore qualified for leave for that purpose in October 2003 – is demonstrably false. The Plaintiff never requested FMLA leave for this

3

purpose nor did she inform Interstate that any such leave was for an FMLA qualifying reason (that is, for the alleged serious health condition (asthma) of her son). Indeed, as the Plaintiff states in her own complaint, her son was not even diagnosed with asthma until February 2003. As such, the Plaintiff did not qualify for FMLA leave in October 2003, and, her post-hoc arguments notwithstanding, her claims for FMLA violations and retaliation have no merit.

Finally, Interstate never entered into any kind of agreement with the Plaintiff that she could work "mother's hours," which she defined as working or not working as she saw fit. Rather, Interstate established a part-time schedule for the Plaintiff that matched the hours of her children's regular school day (8:30 a.m. to 2:30 p.m.) and allowed – as it does all of its employees – the Plaintiff to occasionally be absent from work when her children were ill and required her care. To suggest that Interstate is in breach of some "contract" for requiring the Plaintiff to work her regularly scheduled hours with some degree of consistency is simply ludicrous.

II. Proposed Schedule For Discovery

    A. Automatic Discovery

The Parties are to serve all Automatic Discovery by October 13, 2005.

    B. Written Discovery (Exclusive of Requests for Admissions)

The Parties will propound interrogatories and requests for production of documents by January 13, 2006. The Parties will respond to interrogatories and requests for production of documents within thirty (30) days.

    C. Fact Witness Depositions

The Parties shall depose all fact witnesses by April 13, 2006.

      D.  <u>Expert Witness Designations</u>

Under Rule 26 (a) (2) (B) the Parties agree that all expert witness designations will be completed no later than sixty (60) days subsequent to a denial of either party's summary judgment motion, or, if no such motion is filed, the parties agree to designate all trial experts by July 13, 2006.

      E.  <u>Expert Depositions</u>

The Parties shall depose all trial experts within sixty (60) days of the designation of said expert witnesses, but in any event no later than September 13, 2006.

      F.  <u>Requests for Admissions</u>

The Parties shall serve Requests for Admissions by May 13, 2006.

      G.  <u>Dispositive Motions</u>

The Parties shall file any Dispositive Motions by July 13, 2006.

      H.  <u>Hearings, Pre-Trial Conference, and Trial Date</u>

The Parties estimate a trial lasting approximately three (3) full days.  The parties presume that they will be ready for trial by November 13, 2006.

Respectfully submitted,
Elaine Buchanan, Plaintiff
By her attorney,


_____          Dated: August __, 2005
David E. Belfort
BBO# 634385
Corrigan, Bennett & Belfort, P.C.
One Kendall Square
Bldg. 300, 2nd Floor
Cambridge, MA 02139
Tel.: (617) 577-8800

5

Interstate Electrical Services and
Stephen D'Amico, Defendants
By their attorneys,


*/s/ John M. Simon*                    Dated: August 18, 2005
Carol Chandler
BBO# 080500
John M. Simon
BBO# 645557
Stoneman, Chandler & Miller, LLP
99 High Street
Boston, MA 02110
(617) 542-6789